The next case on the docket is Agenda No. 4, No. 128-092, People of the State of Illinois v. Gary Mayfield. Are counsel prepared to proceed? Counsel for the appellant. Good morning, your honors, counsel, and may it please the court. My name is Zachary Wallace from the Office of the State Appellate Defender, and I'm here on behalf of the defendant appellant, Gary Mayfield. Your honors, this case is not about COVID-19. Instead, the dispositive question, in fact, the only question this court needs to answer, is whether the Speedy Trial Act is merely a matter of court procedure or a substantive law. And this court's own precedent and the nature of the Speedy Trial Act itself already answers this question, where it demonstrates that the act has long been considered a law of substance, not procedure, as it is a proper legislative expansion of defendant's Sixth Amendment rights. In making this argument, we acknowledge that at the time these orders were entered, this court, much like the rest of the State of Illinois, was facing challenging and unprecedented times. However, now that these extenuating circumstances are absent, this court should reaffirm that because the Speedy Trial Act establishes a substantive right to criminal defendants, this court is without the authority to rewrite or suspend the operation of the act. Your honors, we're not disputing that this court has the primary constitutional authority over court procedure. However, this authority is limited to procedure and does not extend to substantive law. Substantive law is law that establishes rights, whereas procedural law is the law that establishes the method of enforcing such rights. Where the Speedy Trial Act establishes the defendant's statutory right to a speedy trial, this court's administrative and supervisory authority does not permit it to rewrite or suspend the operation of the act. Importantly, there is a plethora of this court's precedent where the court treated the Speedy Trial Act as a matter of substantive law. Specifically, I would point to four cases which span over a century where this court has recognized that the Speedy Trial Act is more than a matter of court procedure. It confers the substantive right to a statutory right to a speedy trial to criminal defendants. And first, in 1906, this court in Newland recognized that, in that case, it was without the power to read into the speedy trial statute at the time, an exception which did not appear within. Subsequent to that, in 1957, in the House decision, this court reiterated that the Speedy Trial Act is not a technical statute and its provisions are mandatory and confer a substantial and absolute right upon the defendant under the Constitution. And more recently, in 2006, in the Waddell Court, this court recognized that the Speedy Trial Act did not fall within the scope of this court's administrative and supervisory authority. In Waddell, the State asked this court to read into the Interstate Detainer Act and the Speedy Trial Act that a trial demand filed under the detainer statute remain effective only so long as the defendant remains in prison. And what's notable about this is that, in declining to do so, this court indicated that, even under the best circumstances, we would be loath to entertain such an invitation as the court is not free to rewrite legislation or to ignore an express requirement contained in a statute. Especially with... Counsel, I have a question. Yeah. You maintain that it's a substantive right. So even if we assume that that's – if I assume that's correct, do you dispute that the court – that this court has the authority to determine and regulate how the court system functions throughout our State? No, Your Honor. Okay. I have – it's a multifaceted question. So if I understand you, the substantive right that you are supporting suggests that there is no circumstance under which the right of this court to regulate and determine how the court system functions in Illinois will ever take precedent over that right that you are professing that your client has. Is that correct? That there are no circumstances where our right to regulate the court system and determine how procedural matters will occur in the court that will never take precedent over that particular right that your client has, no matter what. I mean, you're making an absolute argument, and that's what I'm trying to determine, if that is true. Mr. Your Honor, well, to just briefly answer your question, there certainly could be – this court, as you had identified, has the authority to govern how the court system in this State operates, administrative, procedural, supervisory authority. The issue here and where this court's authority does not extend and cannot trump is that the statutory speedy trial right, the right that's established by this statute has any extraordinary circumstances under which this court's authority could trump your client's right. That's – I guess that's what it comes down to. Yes, so the answer to that would then be no, there are no circumstances where this court could eliminate for us – Oh, I didn't say anything about eliminating. No. Because your client's right wasn't eliminated. I mean, you said yourself at the beginning that we face an extraordinary situation. No one's ever faced a pandemic in our lifetime like that. So I think we agree, correct, that that was an extraordinary circumstance? Correct. So are there any extraordinary circumstances that you can see that this court's authority would be – would trump your client's right to the trial at the time he wanted it? Because that's basically what it's come down to. Your client wanted his trial at a particular time, and we weren't able to do that because of the pandemic. Correct. So to answer your question, there would be no circumstances where this court can take the legislative authority to alter this statutory right. The right can be altered, certainly, but it has to be done by the legislature. Because as this Court recognized in the Schroeder case, even in a pandemic, the maximum root in the separation of powers – So do you consider the court's authority over the court system to be the court taking legislative authority? No, Your Honor. The court's authority over the court system is properly within the court. The issue here I would consider to be legislative authority that's being exercised is where you have a statutory right that the court is altering, essentially adding an exception that does not appear within the statute. This court – certainly there are situations where this court has exercised its procedural authority during the pandemic that are certainly proper. And this court's authority over procedure is very vast and wide. The crux of this case is that the Speedy Trial Act is not within the realm of court procedure. It's not mere court procedure. It establishes the substantive right for criminal defendants in custody in this state to be tried within 120 days. So what would it have taken for this to be properly done, in your opinion? Well, Your Honor, for this to be properly done, what would have had to be taken is what happens historically when a statute or a proper legislative enactment does not keep up with emergent times or needs to be changed, and that it's left to the legislature to correct the statute or to change the statute. Counsel, may I ask you this? This is a fact outside of the record. Last Friday in Cook County in Markham – I think it's Markham – there was a water main break in the courthouse. And electricity went out. Heat went out. The building was shut down because it was not functioning. In your view, if a defendant's case was set on the very last day of term on that day and the courthouse was shut down because it had no water, heat or light, in your view, by Monday, the defendant could have filed a motion to dismiss the indictment and his case, and he'd go home free. Is that right? Well, Your Honor, that's correct if the statute does not afford for the delay. The court is restricted to interpret the plain meaning of the statute. And certainly it's important to note that in drafting the statute, the legislature is – But answering my question, in this – Yes. I'm talking about literally on Friday, the courthouse had – an emergency had to be shut down. What would have happened on that day if, in fact, the – there was a case that was on the very last day of the term and couldn't – they couldn't go to trial? Well, to answer your question, the answer would be the statute does not provide for that delay. So that would – That defendant's case would be dismissed, no matter what the charge was, because the court could not provide for a trial on that day because of this emergency. Correct. So where the statute does not authorize it, the court cannot, essentially on a case-by-case basis, add exceptions which are not within the statute. And at the time that your client was pursuing the trial and it did not go to trial, was the area declared a disaster area? I believe so, Your Honor. It was the Lake County Circuit Court. I know that at the time, especially that the initial orders were released, the governor had declared a state of emergency. I'm not entirely aware during the entire process if it was a disaster – or when that essentially was not, but I do know at one point it would have been within. And as far as bringing jurors in, so the trial court would have had to compel jurors who potentially had been told to stay home and not congregate to come in and subject themselves to possible harm. The court should have done that. Well, Your Honor – And then I wonder, what would the court do if people didn't comply? Your Honor, there's two parts to the answer. To give the short answer, the court would be, as it is with other legislative enactments that are not within this Court's authority, would be bound to the plain language of the statute. So in that situation, if the legislature or the general assembly does not act, the court would likely find itself in this untenable situation due to the legislature's inaction. However, this Court entered its initial order in April, and subsequently on May 20th entered the order backdating the continuances to enter in March. So it's certainly possible that that situation may have been avoided if the legislature had acted and amended the statute. But the legislature did not act, and by the time that the legislature perhaps was going to, this Court had entered its order. And then, importantly, in this – following the Waddell case, there was the People v. Sandoval case, which is from 2010, where this Court notes that the balancing inherent in the Speedy Trial Act is the prerogative of the legislature. And what's notable about that is that this Court's emergency orders conduct this balancing that the Court has previously recognized is left to the legislature, where it balances the interest of the public versus the interest of the defendant in his right to a speedy trial. I want to follow up just briefly on Justice Holderwhite's question. In light of the fact that the governor's declaration applied in all affected areas, does that proclamation affect those substantive rights? Well, the governor's emergency power affords him, the governor, the executive branch, the power to suspend certain regulatory statutes and business and certainly alter things. But what his emergency power does not do is eliminate the constitutional guarantees of separation of powers and substantive fundamental rights of defendants. But did he direct, you know, who were considered essential and a movement of people that, you know, applied to the judicial branch as well, in terms of bringing jurors in and having personnel? Correct. His order did implicate that. But still, under this order, what was absent and what it didn't do, it didn't provide any grant to the judicial branch to essentially be able to, sous espante, amend or change substantive rights that are statutory in nature. And it did not, in this order, suspend the operation of these fundamental constitutional rights. During the emergency declaration, there was still the right of due process. There were still these fundamental rights that were not altered. And so to answer your question, no, I don't the – it's our position that the emergency declaration does not alter this Court's authority or where the Speedy Trial Act stands during that time. And this is supported. Simply put, as this Court's well-studied precedent when dealing with the Speedy Trial Act reveals, when confronted with a question involving this Act, this Court has continually abided by the statutory language and recognized that it established a substantive right. And despite this, the State asks this Court to break from this historical understanding of the Act and declare the Speedy Trial Act to be merely a matter of court procedure involving nothing more than the scheduling of criminal trials. And what's notable here is that the State, much like the appellate court below, does not offer any defense or argument for the assertion that the Speedy Trial Act is merely a matter of court procedure, nor does it cite a single case, rule, statute, or even law review article for the notion that the Speedy Trial Act involves no more than the scheduling of criminal trials. In other words, without citing any authority, the State is asking this Court to depart from precedent dating back over a century and declare for the first time that the Speedy Trial Act involves only matters of judicial procedure and thus falls within the purview of this Court's constitutional authority. This Court should decline to accept such an unprecedented and extreme position. And this is especially true where the State's position is in no way tied to COVID-19. It's important to note that while COVID-19 was an extraordinary measure, the State does not locate this Court's authority to alter the Speedy Trial Act in any temporary or emergency power. Rather, the State argues that this Court has always had the authority to sua alter or even eliminate the statutory right because, as the State claims, it's a matter of court procedure falling within this Court's administrative and supervisory authority. So to accept the State's position would require this Court to hold that it, for any reason it deems appropriate, can suspend, amend, or even abolish the statutory right via order or rule. And this would not only render this statute essentially immune from all canons of violation, but the claim language is essentially rendered meaningless where this Court is not bound by the claim language. It has no force in essence, but it also could potentially open the door to this, in cases where the State can't comply with the statutory term, motioning this Court to exercise its supervisory authority to read into the statute a good cause exemption on a case-by-case basis, or to change this fundamental right for essentially any reason it deems appropriate at the time. And if this Court has always had the authority to alter the defendant's statutory right for speedy trial, it begs the question of how many other fundamental rights are subject to amendment by this Court. And the reason for this is because, as I had indicated previously, this Court has – this is not the first time this Court was faced with a statutory speedy trial question. This Court has been dealing with this and interpreting the language of the statute for well over a century. Yet what this Court has never done when interpreting this has never found that the statute is within the Court's authority to be altered, rewritten, or amended however it deems appropriate or to conform with its policy determinations. And to have such an expansive understanding now of this administrative and supervisory authority, where that authority empowers this Court to alter or suspend by rule or order, now statutes have conferred the substantive right to criminal defendants. I mean, this statute establishes a right. If this statute is not here, criminal defendants in the State do not have the right to be discharged after 120 or 160 days, depending on their custody status. So thus, where the Speedy Trial Act establishes the substantive right to a speedy trial, it's evident the Act extends beyond matters of judicial procedure and administration. And as such, this Court's general administrative and supervisory authority did not allow the Court to rewrite, add an exception into, or suspend the operation of the Act. Therefore, if this – if Your Honors have no further questions, we would just ask that because this Court's orders suspending the operation of the Speedy Trial Act were unconstitutional, Mr. Mayfield's conviction must be reversed, where more than 120 days had passed before trial. Thank you. Thank you very much, Counsel. Mr. Fischer? Good morning, Your Honors. Counselor, may it please the Court, Assistant Attorney General Garson Fischer for the people. Your Honors, as your question noted and as my friend has acknowledged, in spring of 2020, this Court was facing a worsening and spreading viral pandemic. And in response to that, the Court took several common-sense steps to ensure the continued safe and effective operation of the State's judiciary. Among them was tolling certain statutory timing requirements on the conduct of court proceedings, including the requirement that criminal trials be conducted within 120 days of the defendant being taken into custody pursuant to the Speedy Trial Act. Now, to be sure, the purpose of the timing requirement in the Speedy Trial Act is to ensure that a defendant's constitutional rights to a Speedy Trial is not infringed upon. But it is ultimately a statutory timing requirement on the conduct of trials. And my friend has created a sort of false dichotomy between statutes that create substantive rights and statutes that impose a procedural obligation on the operations of the Court. There are many examples of rights that the General Assembly provides that then create a procedural obligation for the Court. And where those procedural obligations conflict with this Court's supervision of judicial administration, the Illinois Constitution and this Court have been clear that this Court's rule prevails. For example, General Assembly says you have a right to make a collateral attack against your conviction in front of a different judge than the one before whom you were convicted. This Court has said that which judge a case proceeding is assigned to is a matter of pure discretion for the chief judges of the circuit. This Court's rule prevails. Under my friend's position, this Court, and indeed all of the courts, not this Court below here, and indeed all of the states' courts were faced with a dilemma. They could either continue to operate in an unsafe manner for everyone involved, court personnel, judges, defendants, jurors, witnesses, lawyers, or they could release defendants simply because they were unable to safely comply with the statutorily imposed timing requirement. And defendants' position is that the only way out of this dilemma, the only way for the states' courts to continue to operate in a safe and effective manner, was for an entirely separate branch of government, the legislature, to take action to ensure that they could continue to operate safely. But that's simply not how the system works in Illinois under the 1970 Constitution, which conveys to this Court the ultimate supervisory authority over the operation of the judiciary. Now, to be sure. Yes, Your Honor. The 1870 Constitution did not have the supervisory authority language in it that the 1970 Constitution has in it. Does that make a difference? Well, it does, Your Honor, in so far as, for example, Newlin is not particularly – it's not particularly – it's not apposite here because it was interpreting  that that court lacked authority under the Ohio Constitution doesn't inform this Court's interpretation of its authority under the 1970 Illinois Constitution. Because Ohio doesn't have that language. It has similar language that then is explicitly cabined by certain restrictions that don't exist under the Illinois Constitution. And to my friend's point that this is not purely a COVID-19 rule, imagine, for example, that one word of the Speedy Trial Act were changed so that instead of being tried within 120 days of being taken into custody, it said that defendants had to be tried on the 120th day after being taken into custody. And this Court determined quite reasonably that that was not a part of the way that the courts could effectively operate and pass its own rule that, you know, amended that timing requirement. Certainly that would fall within this Court's administrative authority, supervisory authority to administrate the judiciary. So, yes, Your Honor. Mr. Kishore, you suggested that the Court's action was a demonstration of common sense. We may have differences of opinion about common sense. Where is the Court's – are there no bounds to the Court's authority? Well, there are certainly bounds to the Court's authority. The Court could not, for example, have issued – if MR-30370 had said that the constitutional right to a speedy trial is suspended during, you know, the COVID-19 pandemic until further notice of this Court, that would exceed its authority. But plainly regulating the timing requirements for the Court, independent of the constitutional right – and this Court has also been clear in its prior jurisprudence that the statutory right and the constitutional right are not one and the same. They are not coextensive. And that the statutory right is meant to be a shield, a prophylactic, to protect that constitutional right. But it's not meant to be a sword that can be used to strike down otherwise valid criminal convictions. So certainly it was within this Court's authority to toll that statutory timing requirement so that it didn't create a situation where the courts were faced with this dilemma of either proceeding in an unsafe manner or, in fact, releasing defendants, some unknown percentage of whom are, in fact, you know, guilty of their crimes and would have been subject to valid convictions, but for the pandemic and the timing requirement imposed by the General Assembly. And certainly the General Assembly could have taken action to amend the statute and allow for tolling. It did not. Perhaps it did not because this Court had already taken action. We presume that the General Assembly knows and follows the Constitution and so would have recognized that this Court had the supervisory authority to do what it did and that further action was no longer required. And while the wisdom of the provisions of the 1970 Constitution aren't at issue here, it does reflect that this Court is more nimble and able to administer the judicial system in an effective way and respond to the judiciary's needs than the General Assembly might be under these circumstances. But there's no question that the 1970 Constitution provides this Court with the supervisory authority to take the action it took here and defendants' arguments to the contrary simply turn the separation of powers under the Illinois Constitution on their head and ignore the scope of this Court's supervisory authority. Unless Your Honors have any further questions, people ask that this Court affirm the judgment of the appellate court. Thank you very much. Thank you, Your Honors. Mr. Wallace? Thank you. Your Honors, the State makes a point of saying that this Court has always had the authority to alter timing requirements involving trial. And this is correct. We're not arguing that this Court does not have the authority to do timing requirements. And for instance, a perfect example of this is the way appellate procedures are governed. This Court has the authority to govern filing deadlines, timings of these things, of appellate proceedings. And as my friend had noted, the collateral tax won't appeal. The legislature passes a statute that says a different judge from the judge below handles this, and this Court enters a conflicting role which won. But what's notable here and what the key distinction is, is that the Speedy Trial Act is not a timing requirement. It's establishing the right. The right involves timing. It's a timing right, but it's a substantive right. For instance, take the collateral, attacking a collateral, a collateral tax or conviction. The right, the scheduling of judge, the judge assigned to it would be part of the procedure of this right to collaterally attack your conviction. Here, by tolling the statute, by holding and writing into the statute where it doesn't appear that continuances during this time are excluded from speedy trial computations, this Court's not altering a timing requirement or a procedural aspect of this right. It's effectively eliminating the right. The Speedy Trial Act establishes the right. It establishes the right to be tried within 120 days. And, Your Honor, Your Honors, this power, again, I think everybody agrees that at the time these orders were entered, it was in a global pandemic. The Speedy Trial Act, like, did not afford for a global pandemic. The legislature would have been wise to act, perhaps should have acted. But it's important to note this authority is not identified as an emergency or temporary power. This, the State's arguing it and to hold would be that this is the Court's normal authority. The Speedy Trial Act falls within this Court's constitutional authority so that at any time it could change the language. And this is contrary to this Court's own well-established principle. In the People v. Garrett case, which was from, I believe, 1990, this Court, in interpreting the Speedy Trial Act, located a problem. And this problem was that the statute didn't afford for a situation where when a defendant was in custody and then later released prior to the speedy trial term's passing, the problem was the statute didn't afford for this in-custody time to go towards the out-of-custody statute. It was a timing issue. And what the Court in Garrett did is suggest a solution to this. But it did not use the solution. It noted that the solution is not present in the statute. And it left it to the General Assembly to change the statute if they see fit. And in that case, the General Assembly did amend the statute. But what the Court did not do in Garrett is just change the statute on its own. And to accept the State's position requires that this Court can do that. If there's ever a case where the Speedy Trial Act, maybe it doesn't apply to a certain situation, or there's a tough question, or there's a situation where dismissal maybe goes against the common-sense notion, but it's required by the statute, simply put, this Court is bound by the language of the statute. The legislature was aware that dismissal is a very serious and impactful remedy in enacting the statute. The legislature included exceptions where the statute does not run, for fitness of a defendant, in several physical incapacity, and several others. The legislature considered this. And as the Court noted in Sandoval, there is an inherent balancing test, but it's the prerogative of the legislature in enacting the law to conduct this balancing. This Court simply has no authority to essentially usurp the role of the legislature and add to the statute language that doesn't appear, exceptions that doesn't appear, or to toll the operation of the statute. Counsel? Yes. You know, the opinion in the federal court sided U.S. Supreme Court Justice Robert Jackson in a case that said, you know, the U.S. Constitution is not a suicide pact. Does that argument have any bearing on what this Court did in an emergency situation? Well, Your Honor, if I can ---- Your Honor, that is correct. The appellate court sided that. And that does remain true, that the Constitution is not a suicide pact. But what that phrase doesn't alter is that in uncertain times, as the pandemic was certainly an uncertain time, there's only so much certainty that exists. And one thing that has to remain certain are the constitutional principles and fundamental rights. And the Supreme Court of the United States more recently, in 2020, in the Roman Catholic Diocese of Brooklyn v. Cuomo case, notes that even in a pandemic, the Constitution cannot be put away and forgotten. And in the Schroeder case, this Court recognized as such. So, again, I think nobody is disputing that the objectives of this order were laudable. Nobody is disputing that perhaps the Speedy Trial Act required amendment. But what is at issue here is that this Court cannot act to amend the statute where the legislature fails. The legislature's failure does not expand this Court's authority. And then one last point I would like to note is, my friend had noted the ---- that the Court ---- that the legislature can ---- has this concurrent authority. It can enact complementary statutes involving procedure, and those remain effective as long as it does not conflict with the rule of this. And while that is entirely correct, that doesn't apply here because, as I've indicated and the briefs have argued, the Speedy Trial Act is not a rule of procedure. It doesn't fall within this Court's authority. It's not concurrent authority because it's solely within the realm of the legislature to take action if action is required on this statute. And the legislature is inaction. The legislature can't acquiesce to an unconstitutional order. The fact the legislature doesn't act to correct an order doesn't alter the analysis of whether or not this order violates the Constitution or not. The legislature can't acquiesce to that. So, again, if Your Honors have no further questions, we would just ask that because Mr. Mayfield has not brought the trial within the 128-day statutory time and because this Court's orders are unconstitutional, his conviction should be reversed. Thank you.